Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)
OATA-2025-177

| | | |
|---|---|---|
| EDWIN RUBERO ALVARADO<br><br>Apelante<br><br>v.<br><br>BEST PETROLEUM, CORP.<br><br>Apelado | TA2025AP00173 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil núm.: BY2022CV01385 (501)<br><br>Sobre: Desahucio en Precario y Cobro de Dinero |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece ante este tribunal apelativo, el Sr. Edwin Rubero Alvarado (señor Rubero Alvarado o el apelante) mediante el recurso de apelación del epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 4 de junio de 2025, notificada el 9 de junio siguiente. Mediante este dictamen, el foro primario desestimó la demanda enmendada presentada por el apelante.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

### I.

El 22 de marzo de 2022, el señor Rubero Alvarado presentó una demanda sobre desahucio en precario y cobro de dinero en contra de Best Petroleum Corp. (Best Petroleum o parte apelada). En esencia, el apelante es propietario de una estación de gasolina ubicada en la Calle Comerío #492 del pueblo de Bayamón, en la que Best Petroleum provee gasolina y servicio bajo la marca Gulf.

Adujo que, en mayo de 2021, las partes comenzaron conversaciones sobre el eventual otorgamiento de un contrato de arrendamiento en dicha propiedad. Arguyó que las negociaciones entre las partes no prosperaron ni hubo buena fe por la parte apelada, por lo que el contrato de arrendamiento nunca se perfeccionó. No obstante, Best Petroleum se aprovechó y explotó la propiedad para su beneficio; así como que ocupaba la propiedad en precario y ante el conocimiento expreso de que el apelante no otorgará contrato de arrendamiento alguno, debido a la mala fe exhibida y el incumplimiento con los pagos.

Por lo anterior, le solicitó al TPI que: (a) decretara el desahucio y lanzamiento de Best Petroleum y cualquier otra persona que en su nombre ocupe la propiedad; (b) le ordenara a dicha parte a depositar los pagos de las rentas adeudadas en la cuenta de banco del señor Rubero Alvarado, relativos a los meses de noviembre y diciembre 2021, así como enero, febrero, marzo 2022; y (c) condenara a Best Petroleum al pago de costas y honorarios de abogado.

El 18 de mayo de 2022, Best Petroleum presentó su *Contestación a la Demanda y Reconvención* en la que aceptó algunas alegaciones y negó otras. Entre las defensas afirmativas estableció que: (a) entre las partes se perfeccionó un contrato de arrendamiento verbal; (b) la posesión de Best Petroleum no es en precario, sino como consecuencia de ese acuerdo verbal; (c) los términos del contrato de arrendamiento estaban acordados y eran: un arrendamiento por 10 años; canon mensual de $5,000 durante los primeros cinco (5) años y, $6,000 del sexto al décimo año, y que los acuerdos se reducirían a un documento escrito.

Luego de múltiples eventos procesales, el 25 de marzo de 2023, el apelante presentó una Demanda Enmendada, en la que incluyó a Tres Bravo Corp. (Tres Bravo), como demandado adicional, al ocupar actualmente la propiedad como subarrendatario. Ello, sin

el apelante haber consentido al subarriendo. Agregó, además, alegaciones contra Best Petroleum en la que le imputó haber actuado de mala fe, con conocimiento del valor real en el mercado de la propiedad, lo cual equivale a dolo grave en la contratación, y provocando la nulidad del consentimiento del señor Rubero Alvarado. Al amparo de estas, y otras alegaciones, solicitó, entre otros remedios, $250,000 como compensación en daños emocionales; una cuantía no menor de $5,000 por cada mes que Best Petroleum se ha servido de la propiedad, a pesar de haber sido expulsado; se emitiera una sentencia declaratoria según solicitado, y el desahucio de Best Petroleum o cualquier subarrendatario que ocupe el inmueble.

El 24 de mayo de 2023, Best Petroleum presentó su *Contestación a la Demanda Enmendada y Reconvención*. En esta planteó argumentos similares a los incluidos en la primera contestación. El 26 de julio de 2023, Tres Bravo incoó una *Contestación a Demanda Enmendada*. En síntesis, aceptó que Best Petroleum le subarrendó la propiedad y que el contrato de subarrendamiento entre Best Petroleum y Tres Bravo es un contrato válido en derecho, toda vez que la primera tiene la potestad para subarrendar, conforme al acuerdo verbal que tiene la parte apelada con el señor Rubero Alvarado.

El 23 de agosto de 2023, el apelante presentó una *Moción en Solicitud de Sentencia Sumaria Parcial*. El 11 de octubre, Best Petroleum presentó una *Oposición Preliminar* a dicho pedido y la complementó, al día siguiente, mediante una *Moción Sometiendo Anejos*. Asimismo, el 13 de octubre, Tres Bravo presentó su *Oposición a la Moción de Sentencia Sumaria Parcial*. Las partes presentaron réplicas y dúplicas.

Así las cosas, el 12 de abril de 2024, el TPI emitió una Resolución en la que declaró *No Ha Lugar* a la *Moción en Solicitud de*

*Sentencia Sumaria Parcial* instada por el apelante. La misma se notificó el 16 de abril siguiente. En este dictamen, el foro revisado esbozó diecinueve (19) hechos sobre los cuales no existe controversia.[1] Además, concluyó que existía controversia sobre trece (13) hechos materiales.[2] Esta Resolución fue objeto de revisión mediante un recurso de *certiorari* ante esta *Curia*, presentado por el señor Rubero Alvarado, caso KLCE202400613, el que fue denegado mediante una *Resolución* emitida el 28 de junio de 2024.

El 6 de mayo de 2025, se celebró el juicio en su fondo. De la *Minuta* y de la Transcripción de la Prueba Oral (TPO) surge que el señor Rubero Alvarado presentó como prueba testifical al Sr. Francisco Pagés de Arteaga y su propio testimonio. Además, surge que, durante el testimonio del apelante, se marcó como prueba documental la siguiente:

- Exhibit 1: Cheque de Best Petroleum de 2 de agosto de 2021 a Edwin Rubero por $15,000.
- Exhibit 2: Carta de Peerless Oil a Edwin Rubero de 31 de julio de 2023.

La parte apelada, concluido el desfile de prueba del señor Rubero, y una vez sometido el caso, presentó una moción de desestimación contra la prueba (*nonsuit*) al palio de la Regla 39.2 (c) de las de Procedimiento Civil. Surge de la TPO que el foro apelado escuchó los argumentos de las partes y expresó en corte abierta, que la declaraba *Con Lugar*.[3]

Evaluada y aquilatada la prueba documental y testifical presentada en el juicio, el 4 de junio de 2025 el foro primario emitió la *Sentencia* apelada. En esta, esbozó cuarenta y dos (42) determinaciones de hechos incontrovertidos en las que se encuentran incluidas las diecinueve (19) detalladas en la Resolución

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI, Entrada Núm. 173, a las págs. 4-7.
[2] *Íd.*, a la pág. 7.
[3] Véase, TPO, a las págs. 190-217.

dictada el 12 de abril de 2024.[4] La misma se notificó el 9 de junio posterior. Acorde con lo determinado, el foro apelado desestimó la Demanda Enmendada y resolvió que la Reconvención se tornó académica. Esto debido a que, conforme con el decreto, se hacía innecesario la presentación de prueba por Best Petroleum. Por lo que, desestimó la Reconvención, más expresó que impondría costas y gastos.

Además, el foro *a quo* coligió que:[5]

En el caso de autos, Edwin Rubero y Best Petroleum llegaron a un contrato verbal sobre el arrendamiento de la estación de gasolina. Según las conversaciones entre ambas partes, dichos acuerdos debían recogerse en un escrito y firmarse.

Una vez las partes han llegado a un contrato, mediante la expresión del consentimiento a los términos del mismo, existe el nacimiento del contrato y, por tanto, la efectividad de las prestaciones. Edwin Rubero y Best Petroleum llegaron a acuerdos mediante [*sic*] para el arrendamiento de la estación de gasolina. **Aunque el acuerdo fue verbal, contenía los elementos fundamentales para la contratación**. **En otras palabras, los términos discutidos y aceptados perfeccionaron el contrato**. El mero hecho de que los acuerdos se hayan discutido verbalmente y aceptado no implica que las partes estuvieran en la fase de generar una contratación. El proceso de generación de una contratación se da cuando las partes están en plena negociación sin que haya habido acuerdo, situación muy distinta a la que ocurrió entre Edwin Rubero y Best Petroleum.

Las partes no estaban activamente buscando hacer una negociación. **Del testimonio de Edwin Rubero se desprendió claramente que ya las partes habían alcanzado los acuerdos**. Ejemplo de esto son los siguientes. **Las partes acordaron \$5,000.00 mensuales de canon de arrendamiento, los cuales Edwin Rubero ha cobrado hasta el día de hoy**. Los cuatro borradores establecen ese canon de arrendamiento para los primeros cinco años y \$6,000.00 del sexto al décimo año. Además, Edwin Rubero admitió que nunca solicitó una cantidad de renta diferente. **Del testimonio de Edwin Rubero también se desprendió que la estación estaba en deterioro y con daños y que Best Petroleum se encargó de hacer las reparaciones y de reabrir la estación**. No había negociación pendiente sobre este acuerdo. De hecho, Edwin Rubero declaró que no detuvo ni impidió los trabajos de reparación llevados a cabo por Best Petroleum en su estación de gasolina. Tampoco estaba pendiente de negociación la autorización para subarrendar la estación de gasolina. A pesar de que Edwin Rubero declaró que no había

---

[4] *Íd.*, Entrada Núm. 222, a las págs. 4-9.
[5] *Íd.*, Entrada Núm. 222, a las págs. 10-15. Énfasis nuestro.

dado esa autorización, ello choca con su propio testimonio de que conocía que Best Petroleum es un mayorista y por tanto está impedido de operar la estación, lo cual implica necesariamente, subarrendar a un tercero como operador. De igual forma, los cuatro borradores circulados establecen el permiso para el subarrendamiento.

Sobre los asuntos que alegadamente no se había acordado, es importante señalar que Edwin Rubero testificó que no conocía o no recordaba el contenido de los borradores circulados, ni las negociaciones de esos borradores. De hecho, a pesar de que hablaba de "negociaciones", no pudo describir en qué consistían esas negociaciones, cuando fue confrontado en el contrainterrogatorio con los borradores. Es importante señalar que la Determinación de Hechos número 14 establece todas las cláusulas que estaban redactadas de forma idéntica en todos los borradores sin que se hubiese solicitado cambio alguno. Esto nos lleva a concluir que se trataba de acuerdos alcanzados entre las partes y no que se trataba de negociaciones activas. Es menester señalar que, en relación a la cláusula de responsabilidad ambiental, Edwin Rubero también admitió que su acuerdo había sido que la responsabilidad sobre este tema recae en Best Petroleum si son eventos ocurridos durante la vigencia del contrato de arrendamiento y responsabilidad de él por eventos anteriores o posteriores a dicha vigencia. Esto, según admitió el propio Edwin Rubero, coincide con la posición de Best Petroleum. Edwin Rubero no pudo demostrar tampoco que estuviera llevando a cabo una negociación activa sobre la responsabilidad ambiental.

La Demanda Enmendada contiene una alegación de que Best Petroleum incurrió en dolo al, supuestamente, ocultar el valor real de la renta de la estación. Edwin Rubero no aportó prueba alguna de ese alegado dolo. Las partes acordaron $5,000.00 de renta inicial y Edwin Rubero en ningún momento solicitó una cantidad distinta a ésta. La oferta enviada por Peerless Oil el 31 de julio de 2023 no puede ser aceptada como prueba del valor de la renta en mayo de 2021, que fue el momento en que Best Petroleum y Edwin Rubero llevaron a cabo sus acuerdos. Cabe destacar que según el propio testimonio de Edwin Rubero, en mayo de 2021 la estación estaba deteriorara, con daños y cerrada al público. Posteriormente, Best Petroleum llevó a cabo las reparaciones a su costo y la abrió al público, por lo cual las condiciones de 2023 no son comparables a las de 2021. Sumado a lo anterior, es importante resaltar que Edwin Rubero en su testimonio, luego de ser confrontado con su propia deposición, **admitió que Best Petroleum no incurrió en ninguna clase de engaño o información falsa en las en las negociaciones con él.**

Durante el contrainterrogatorio, Edwin Rubero afirmó que, en su opinión, los contratos carecían de validez si no constaban por escrito, firmado por las partes, y con firma y sello de un abogado. Nuestro Tribunal Supremo ha reiterado que, dentro de nuestro ordenamiento jurídico, los contratos verbales poseen la misma validez que los contratos escritos. Por tanto, debe entenderse que los contratos verbales no están

prohibidos. Méndez v. Morales, 142 D.P.R. 26, 34 (1996). La afirmación de Edwin Rubero de que no hay obligación de cumplir los contratos verbales, quizás explica su posición de no reconocer que alcanzó unos acuerdos con Best Petroleum, por los cuales se ha beneficiado, no solamente al recibir un canon de arrendamiento mensual, sino también las reparaciones a su propiedad por parte de Best Petroleum, y que no se le haya cobrado la deuda que asumió a favor de Best Petroleum cuando desahució al inquilino y operador anterior de la estación. No obstante, nuestro ordenamiento jurídico reconoce la validez del contrato verbal, lo cual obliga a Rubero a cumplir los términos del mismo. En este caso solo faltaba la mera formalidad de reducir a escrito lo que ya eran acuerdos verbales, no solamente alcanzados, sino obligaciones que se habían ya ejecutado y continuaban ejecutándose, tales como las remodelaciones costeadas por Best Petroleum, así como el pago de los cánones de arrendamiento pactados.

Al concluir el desfile de prueba de la parte demandante, Best Petroleum presentó una moción de desestimación contra la prueba ("non-suit") al amparo de la Regla 39.2 (c) de Procedimiento Civil …

…

… Este Tribunal tuvo oportunidad de observar cuidadosamente el testimonio de Edwin Rubero. Durante el examen directo, Rubero respondió todas las preguntas formuladas por su abogado. Sin embargo, durante el contrainterrogatorio, Edwin Rubero fue impreciso en sus respuestas y afirmó en decenas de ocasiones no recordar o no conocer los hechos. Además, dicho testimonio fue impugnado en varias ocasiones, incluyendo el que fue confrontado en tres ocasiones con expresiones previas suyas durante su deposición del 21 de febrero de 2023 que eran contrarias al testimonio vertido en sala. **Por otro lado, partes de su testimonio nos parecían inconsistentes y contradictorias al desarrollo de los hechos. Ese testimonio no mereció credibilidad al Tribunal para establecer que no había llegado a un contrato con Best Petroleum.**

Este Tribunal concluye que entre Edwin Rubero y Best Petroleum existe un contrato de arrendamiento válido y que sobre sus cláusulas no existía una negociación activa en proceso. Por el contrario, las partes están obligadas por los acuerdos verbales que alcanzaron, y lo único que restaba por hacerse era la mera formalidad de reducir a escrito el contrato. También concluimos que el acuerdo alcanzado incluye la autorización de subarrendar la estación de gasolina, por lo cual la ocupación de ésta por parte de Tres Bravos está cobijada por esta facultad de subarriendo.

Concluimos que procede la desestimación de la Demanda Enmendada. Las Determinaciones de Hechos que hemos establecido convierten en académica la Reconvención y hacen innecesaria la presentación de prueba por parte de Best Petroleum. Se desestima la Reconvención por la doctrina de academicidad.

En desacuerdo, el 24 de junio de 2025 el señor Rubero Alvarado solicitó reconsideración, la cual fue denegada por el TPI mediante la Resolución del 25 de junio, notificada el 27 posterior.

Todavía inconforme con el dictamen, el apelante acude ante este foro apelativo imputándole al foro primario haber incurrido en los siguientes errores:

> ERRÓ EL TPI AL DESESTIMAR LA DEMANDA SIN LA PARTE DEMANDADA HABER PRESENTADO EVIDENCIA ALGUNA PARA DEMOSTRAR QUE TIENEN DERECHO A POSEER LA GASOLINERA.

> ERRÓ EL TPI AL PREJUZGAR EL CASO DE AUTOS, ACTUANDO DE MANERA PARCIALIZADA Y EN ABUSO DE DISCRECIÓN.

> ERRÓ EL TPI AL DESESTIMAR LA DEMANDA A PESAR DE QUE NO HAY CONTROVERSIA DE QUE LA DEMANDADA REALIZÓ VARIOS PAGOS POR CONCEPTO DE RENTA DE MANERA TARDÍA.

> ERRÓ EL TPI AL DESESTIMAR LA DEMANDA A PESAR DE QUE EDWIN PROBÓ TODOS LOS ELEMENTOS PARA UN DESAHUCIO.

El 15 de agosto de 2025, emitimos una *Resolución* concediendo término a las partes para reunirse y estipular la corrección de la transcripción de la prueba oral. No obstante, este trámite presentó varias situaciones con lo ordenado, lo que motivó la emisión de múltiples resoluciones por esta *Curia* resolviendo las mismas. Finalmente, el 17 de septiembre de 2025 se presentó la Transcripción de la Prueba Oral (TPO) estipulada y mediante una *Resolución* del mismo día, así la acogimos. Además, el 9 de octubre de 2025 la parte apelante presentó un *Alegato Suplementario de Recurso de Apelación.*

El 10 de octubre siguiente, este tribunal emitió una *Resolución* concediéndole término a la parte apelada para presentar su oposición. El 1 de diciembre 2025, Best Petroleum y Tres Bravos presentaron sus alegatos, respectivamente, por lo que nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes, el expediente apelativo y la TPO; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Teoría General de los Contratos**

En nuestro ordenamiento jurídico son fuente de obligación la ley, **los contratos**, los cuasicontratos, los actos ilícitos, los actos u omisiones en los que interviene culpa o negligencia y cualquier acto idóneo para producirlas conforme a los establecido bajo el estado de derecho. Artículo 1063 del Código Civil, 31 LPRA sec. 8984. Los contratos existen desde que una o varias personas expresan su consentimiento para obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio por las formas previstas en ley. Artículo 1230 del Código Civil, 31 LPRA sec. 9751. Un contrato se perfecciona cuando las partes consienten sobre el objeto y la causa específica a las que se obligan. Artículo 1237 del Código Civil, 31 LPRA sec. 9771. *Sonnell Transit Serv. v. Junta de Subasta*, 2025 TSPR 85, 216 DPR ___ (2025).

En este sentido, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1238 del Código Civil de 2020, 31 LPRA sec. 9772. El objeto, por su parte, debe ser determinable. No pueden ser objeto del negocio jurídico los hechos de realización imposible, ilícitos, inmorales, contrarios al orden público, a las buenas costumbres, o lesivos de derechos de terceros. Artículo 269 del Código Civil de 2020, 31 LPRA sec. 6131. *Sonnell Transit Serv. v. Junta de Subastas*, supra. Mientras que, en esencia, la causa es el fin que motiva la contratación y que se presumirá lícita, aunque no esté expresada. Artículo 271 del Código Civil de 2020, 31 LPRA sec. 6142.

Es decir, que son elementos esenciales del contrato el consentimiento, objeto y causa. Siempre que concurran estas tres condiciones para su validez, el acuerdo entre las partes se hace obligatorio. *Sonnell Transit Serv. v. Junta de Subasta*, supra; *Cruz López v. Casa Bella y otros*, 213 DPR 980, 995 (2024). Por tanto, lo acordado tiene fuerza de ley entre las partes. Artículo 1233 del Código Civil, 31 LPRA sec. 9754. Sin embargo, es menester puntualizar que, tras su perfeccionamiento, las partes no solo se obligan a su cumplimiento, sino también a sus consecuencias.

Por otro lado, nuestro ordenamiento jurídico, como regla general, establece que los negocios jurídicos -incluidos los contratos- son de libre forma a excepción de que la ley imponga una forma determinada para su validez, o que así lo convengan entre las partes. Artículo 277 del Código Civil de 2020, 31 LPRA sec. 6161. Es decir que, cuando no se conviene entre los contratantes y la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente. Ante la ausencia de un requisito de forma, el acuerdo entre las partes puede ser escrito o verbal. El contrato o acuerdo verbal tiene la misma fuerza vinculante que un contrato escrito.

**Desahucio**

El desahucio es un procedimiento especial de naturaleza sumaria cuyo objetivo principal es recuperar la posesión material de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 749-750 (1987); *C.R.U.V. v. Román*, 100 DPR 318, 321 (1971). Nuestro más alto foro ha reiterado jurisprudencialmente que el desahucio es "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble." *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992).

Así, el desahucio es el procedimiento especial que tiene el dueño de una finca, sus apoderados, los usufructuarios u otra persona con derecho a disfrutarla, para recuperar la posesión de un inmueble. *Markovic v. Meldon y otro*, 2025 TSPR 99, 216 DPR ___ (2025); *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235 (2018). El objetivo del desahucio es devolverle la posesión de hecho de un inmueble al dueño mediante el lanzamiento del arrendatario o precarista que detenta la propiedad sin pagar el canon correspondiente. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016). El proceso correspondiente al desahucio sumario está reglamentado conforme lo dispuesto en los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838.

Las controversias que pueden ventilarse en este procedimiento sumario son limitadas. De manera que lo único que se intenta recobrar, mediante la referida acción sumaria, es la posesión del inmueble. *Markovic v. Meldon y otro, supra.* Los conflictos sobre la titularidad no pueden dilucidarse en un procedimiento de desahucio. *Íd.*

Por otro lado, nuestro ordenamiento jurídico reconoce que los foros judiciales gozan discreción para convertir el procedimiento de desahucio en uno ordinario, prorrogar términos, posponer señalamientos e, incluso, para permitir enmiendas en las alegaciones. *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* a la pág. 241. Tras una orden que convierta la reclamación a un proceso ordinario, esta estará sujeta a las reglas de litigación civil ordinaria.

**Desestimación contra la prueba *nonsuit***

La Regla 39.2 inciso (c) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c), regula la desestimación de un caso por insuficiencia de prueba de la siguiente manera:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar a su derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose **en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno**. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tiene el efecto de una adjudicación en los méritos. (Enfasis nuestro)

En *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011), el Tribunal Supremo elaboró los factores a tomarse en cuenta, al adjudicar una solicitud de desestimación, al amparo de esta regla, determinó lo siguiente:

> En una moción al amparo de la Regla 39.2(c), conocida como una moción contra la prueba o *non-suit,* el tribunal está autorizado, luego de la presentación de prueba por parte del demandante, **a aquilatar la misma y a formular su apreciación de los hechos**, **según la credibilidad que le haya merecido la evidencia**. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba. En caso de duda, debe requerirse al demandado que presente su caso. En ese momento, le corresponde al tribunal determinar si la prueba presentada por la parte demandante **es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción**.
>
> [...] Además dada la gravedad de una desestimación de la causa de acción, los tribunales deben ser cuidadosos al atender una moción al amparo de la Regla 39.2(c) pues **conlleva el final de la reclamación de un demandante** y de su día en corte. Se trata de una decisión que descansa en la sana discreción del tribunal. [nota al calce omitidas][Énfasis Nuestro]

Por último, reiteramos que nuestro Tribunal Supremo ha sido enfático en que la moción de *nonsuit* solo procederá cuando el tribunal está plenamente convencido que el demandante no tiene oportunidad de prevalecer. *Lebrón v. Díaz*, 166 DPR 89, 94-95 (2005).

**La apreciación de la prueba y el estándar de revisión apelativa**

Nuestro más alto foro ha establecido claramente que los foros apelativos solo intervendrán con la apreciación de la prueba que

haga el foro de instancia, cuando se demuestre que la intervención del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto. *Colón v. Lotería*, 167 DPR 625 (2006); *Colón v. Glamorous Nails*, 167 DPR 33 (2006); *Rodríguez v. Urban Brands*, 167 DPR 509 (2006); *SLG Giovanetti v. ELA,* 161 DPR 492, 518 (2004); *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Esto implica que los tribunales apelativos deben rendir deferencia a la apreciación de la prueba que realiza un tribunal de instancia. *McConnell v. Palau*, 161 DPR 734, 750 (2004).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones ponderadas del foro de instancia. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999). Esto porque, los juzgadores de primera instancia se encuentran en mejor posición de aquilatar la prueba testifical, observar el comportamiento de los testigos mientras declaran y adjudicar la credibilidad que merezcan. *Argüello v. Argüello,* 155 DPR 62, 79 (2001); *Orta v. Padilla*, 137 DPR 927, 937 (1995); *Monllor v. Soc. de Gananciales*, 138 DPR 600, 610 (1995).

Sobre el particular, las Reglas de Procedimiento Civil disponen que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Regla 42.2, de las Reglas Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Esto porque, al evaluar la prueba oral, el juzgador de instancia tiene que ponderar integradamente los siguientes aspectos: (1) el comportamiento del testigo mientras declara y la forma en que lo hace; (2) la naturaleza o carácter del testimonio; (3) el grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara; (4) declaraciones anteriores de la

persona testigo; (5) existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad por parte de la persona testigo; (6) existencia o inexistencia, falsedad, ambigüedad o imprecisión de un hecho declarado por la persona testigo y; (7) carácter o conducta de la persona testigo en cuanto a veracidad o mendacidad. Regla 608, inciso (B) (1-7) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 608. En ese sentido, si al evaluar las transcripciones de la prueba oral, la naturaleza de los testimonios es creíble y los mismos no reflejan contradicciones, el foro apelativo no podrá sustituir el criterio del foro de instancia con el suyo propio.

### III.

En esencia, el apelante expuso que el TPI erró al desestimar la demanda sin permitirle presentar evidencia para demostrar que tiene derecho a poseer la gasolinera. A su vez, señaló que actuó incorrectamente al prejuzgar el caso al actuar de manera parcializada y en abuso de discreción. También planteó que el foro primario incidió al desestimar la demanda, a pesar de que no existe controversia de que Best Petroleum realizó varios pagos por concepto de renta de manera tardía, y aun cuando el apelante probó todos los elementos para un desahucio.

Advertimos que, en el recurso de epígrafe, el señor Rubero Alvarado arguye que las determinaciones de hechos núms. 21, 24, 25, 27, 29, 31, 35, 37, 38 y 40, establecidas por el TPI en el dictamen impugnado, no están sustentadas por evidencia alguna; máxime cuando este no presentó evidencia alguna para sustentarlas.[6] No obstante, este no realizó una argumentación adecuada de las razones por las que entiende que el raciocinio del tribunal de instancia está equivocado o huérfano de evidencia que sustente lo decretado en cada una de estas. Por el contrario, dichas

---

[6] Véase, el recurso de *Apelación,* a la pág. 7.

determinaciones están sustentadas en el testimonio del propio apelante como se esboza más adelante; así como en la credibilidad que el foro primario confirió a lo declarado por este.

A continuación, expondremos un detalle de los testimonios vertidos en el juicio en su fondo más relevantes a las controversias ante nuestra consideración.

El señor Rubero Alvarado declaró que era un comerciante retirado y aseguró que el día que conoció al Sr. Antonio De Jesús (señor De Jesús) hablaron como de diez (10) a quince (15) minutos en la estación.[7] Indicó que luego de esa conversación pasaron de dos (2) a tres (3) semanas en que volvieron a conversar por teléfono. Especificó que en la llamada telefónica el señor De Jesús le ofreció pagarle $5,000 mensuales de renta y él le dijo que *Sí*.[8] Manifestó que, en la misma llamada, le dijo al señor De Jesús que en lo que negociaban de buena fe que vendiera gasolina mes a mes.[9]

El testigo también indicó que en dicho acuerdo de renta mes a mes era importante que Best Petroleum le pagara la renta a tiempo.[10] Sobre esto, expuso que su abogada recibió un cheque de $15,000 (Exhibit 1) expedido por Best Petroleum por tres (3) meses que le debían.[11] Aseguró que no firmó un acuerdo escrito autorizando a la parte apelada a subarrendar la gasolinera ni que se rentó la propiedad por un plazo indefinido.[12] Tampoco llegó a un acuerdo verbal para que Best Petroleum rentara la estación de gasolina por un plazo indefinido.[13]

Más bien, aseveró que dialogó con su abogada para las negociaciones. El señor Rubero Alvarado indicó que recibió una

---

[7] Véase, TPO a la pág. 73, líneas 2-3.
[8] *Íd.*, a la pág. 75, líneas 8-19.
[9] *Íd.*, a la pág. 76, líneas 2-10.
[10] *Íd.*, líneas 15-21.
[11] *Íd.*, a la pág. 79, líneas 14-18.
[12] *Íd.*, líneas 19-25, y a la pág. 80, líneas 1-3.
[13] *Íd.*, a la pág. 80, líneas 4-7.

oferta de Texaco para arrendar la gasolinera por $10,000 mensuales.

En el contrainterrogatorio el apelante indicó que, previo a conocer al señor De Jesús en su estación, la misma estaba arrendada a *Omar* por $4,500 los primeros años y por $5,500 los últimos.[14] Aceptó que al momento de llegar el señor De Jesús a la estación, esta estaba en malas condiciones con grietas, puerta rota, tienda con filtraciones, terreno había bajado con el huracán, verja en el piso, rejas dañadas, techo acústico roto, líneas eléctricas corroídas y así se los hizo saber a él y a Oscar Nieves.[15] Aseguró que conocía que Best Petroleum realizó las reparaciones y no detuvo los trabajos. Por lo que, admitió que no realizó alguna inversión en la remodelación.[16]

El apelante negó que el señor De Jesús le haya realizado la oferta por el arrendamiento de la gasolinera, ni que el término sería de diez (10) años. No obstante, dijo que no le pidió a Best Petroleum una cantidad distinta a los $5,000.[17] Este admitió que le entregó las llaves a la parte apelada en mayo de 2021 y en junio de ese mismo año, al regresar de Miami, vio que la gasolinera estaba operando, pero no le indicó al operador que no lo había autorizado a hacerlo.[18]

El apelante especificó que, a excepción del primer borrador contrato, no recordaba que vio los otros, ni si el contrato era para arrendarle a Best Petroleum la estación, si era por diez (10) años ni las cláusulas que estaban incluidas en los mismos.[19] Manifestó que comenzó a recibir los $5,000 de la renta y respecto al Exhibit Núm. 2 admitió que se envió a la dirección incorrecta, pero que tan pronto Best Petroleum se enteró de que no se había cobrado los cheques

---

[14] Véase, TPO a la pág. 94, líneas 15-24.
[15] *Íd.*, a la pág. 95, líneas 14-25; y a la pág. 96, líneas 1-24.
[16] *Íd.*, a la pág. 105, líneas 5-10.
[17] *Íd.*, a la pág. 108, líneas 20-22.
[18] *Íd.*, a la pág. 113, líneas 1-24; y a la pág. 114, líneas 1-4.
[19] *Íd.*, a las págs. 115-124.

emitió el presentado en evidencia por $15,000 y él fue inmediatamente a buscarlo.[20] **Por lo que, cobró los meses que le debían.**

Este aseveró que no tenía conocimiento de que su abogada estuviera negociando una cuantía distinta de renta a los $5,000 que recibía.[21] Expresó que no recordaba si entre las cosas a arreglar o reemplazar estaban: la cabina, las neveras, la consola (donde se cobra) y la planta eléctrica ni que Best Petroleum instaló una nueva y preparó un *car wash* que estaba en desuso más realizó reparaciones eléctricas a la estructura.[22]

El señor Rubero Alvarado, además, aceptó que Best Petroleum pintó el lugar y reconoció que *Yo no he hecho nada ahí.*[23] Reconoció que la parte apelada colocó losas en la tienda y cambió las puertas rotas.

Este admitió que la responsabilidad ambiental por los tanques soterrados siempre le corresponde a él como dueño. Añadió que nunca le pidió a Best Petroleum que asumiera responsabilidad al asumir la operación de la estación.[24] Expuso que los $5,000 que ha venido recibiendo era para que operara la propiedad en lo que se negociaba.[25]

Este explicó que sabe negociar y que ello implica aceptar o no aceptar la propuesta que le ofrecieron. Así, señaló que "***él no me iba a dar más de $5,000 pesos***".[26] Aceptó conocer que Best Petroleum es un mayorista por lo que no podía operar la gasolinera y tenía que buscar un operador. Indicó que, para el 2023, la estación tenía todas las reparaciones que Best Petroleum le había realizado a la estación por lo que la propuesta del 2023 tomó en consideración una

---

[20] *Íd.*, a las págs. 125-127.
[21] Véase, TPO a la pág. 130, líneas 23-25; y a la pág. 131, líneas 1-15.
[22] *Íd.*, a las págs. 144-147.
[23] *Íd.*, a la pág. 148, líneas 1-16.
[24] *Íd.*, a la pág. 159.
[25] *Íd.*, a la pág. 160, línea 25; y a la pág. 161, líneas 1-11.
[26] *Íd.*, a la pág. 162, líneas 7-20.

propiedad que era muy diferente a la del 2021.[27] Dijo que no recordaba, si en los contratos, se estableció que la parte apelada haría una investigación ambiental en el terreno.[28]

El señor Rubero Alvarado señaló que, para él, un contrato verbal no tiene la misma validez de uno escrito.[29] Añadió que si no está firmado y ponchado por un abogado no es válido y no hay que cumplirlo.[30] Manifestó que no recordaba si Best Petroleum, en el transcurso de las negociaciones, le proporcionó información falsa o lo engañó.[31]

Este manifestó que no recordaba que el 21 de febrero de 2023 fue al abogado de la parte apelada y contestó unas preguntas que él le hizo.[32]

También declaró, mediante videocámara, el Sr. Francisco Pagés de Arteaga quien indicó que es Director de Retail de Puerto Rico Energy. Durante su testimonio, el representante legal de Best Petroleum objetó una carta firmada por este en junio de 2023, que se pretendía presentar como evidencia para probar el valor en el mercado de la renta, por ser impertinente a la controversia del caso y para evitar que la prueba enmiende las alegaciones. El TPI declaró *Ha Lugar* a la objeción y el abogado del apelante realizó una oferta de prueba.[33] Al respecto, se explicó que en la demanda se solicita la diferencia de los $5,000 de renta mensuales y la cuantía del valor en el mercado. Por ello, la pertinencia del documento, ya que con este se probaría que el apelante ha recibido ofertas para alquiler de $10,000 mensuales y, por ende, se demostraría la alegación de los daños por la diferencia.[34] En el contrainterrogatorio el testigo

---

[27] *Íd.*, a la pág. 169, líneas 14-25; y a la pág. 170, líneas 1-3.
[28] *Íd.*, a la pág. 177, líneas 16-20.
[29] *Íd.*, a la pág. 180, líneas 18-20.
[30] *Íd.*, a la pág. 181, líneas 3-8.
[31] *Íd.*, a la pág. 182.
[32] *Íd.*, a la pág. 183, líneas 3-5.
[33] *Íd.*, a la pág. 51.
[34] *Íd.*, a las págs. 55- 58.

admitió desconocer en qué condiciones estaba la gasolinera en verano del 2021. Por lo que no sabía si las condiciones presentes en el 2023 eran parecidas o diferentes a las del 2021.[35]

A base de los testimonios transcritos previamente, en especial el vertido por el apelante no cabe duda de que las partes llegaron a un acuerdo verbal final para el uso y ocupación del inmueble; así como para el pago de la renta. El que cumple con todos los requisitos normativos jurisprudenciales para configurarse una contratación. Como reseñó el TPI, la cesión de la llave de la estación a Best Petroleum, así lo confirma. Por lo que, no encontramos otra justificación que valide los hechos relativos a que la parte apelada, en mayo de 2021, tomó la posesión de la gasolinera y posteriormente, realizó múltiples reparaciones de la estación que estaba "deteriorada, con daños y cerrada a operaciones."[36] Los que fueron aceptados por el apelante durante su testimonio. Sobre este particular, el señor Rubero Alvarado expresó que *Yo no he hecho nada ahí.* También este admitió que, al regresar de Miami, en junio de 2021, vio que la gasolinera estaba operando, pero no le indicó al operador que no lo había autorizado a hacerlo. Lo que confirma claramente que este había consentido que Best Petroleum trabajara la gasolinera a través de un operador, ya que la empresa no podía por ser un mayorista.

De igual forma, coincidimos con el TPI, al no otorgar validez al argumento de que solo se perfeccionó un contrato verbal de mes a mes porque resulta difícil comprender cómo Best Petroleum aceptó

---

[35] *Íd.,* a las pág. 67, líneas 4-20.

[36] En la Determinación de hechos núm. 26 el foro apelado estableció:

> Edwin Rubero admitió que Best Petroleum realizó mejoras en la fachada de la tienda, reparaciones de la cabina, neveras, consolas, instalación de planta eléctrica, reparación de car wash que estaba en desuso, reparaciones en las instalaciones y estructuras eléctricas, cablerías, receptáculos, instalación de luces, pintura, losetas de la tienda, planchas del techo de la marquesina, puertas de entrada, fascias y otros.
>
> Véase, el SUMAC del TPI, Entrada núm. 222, a la pág. 7.

invertir, de su dinero, en los arreglos del lugar, aun conociendo que su contrato expiraba al finalizar cada mes. Tampoco obviemos que utilizó recursos económicos para ordenar la preparación de un estudio ambiental.

Así pues, no podemos avalar el planteamiento del apelante respecto a que las partes solo se quedaron en la fase de negociaciones. Por su parte, como bien arguyen Best Petroleum y Tres Bravos en sus escritos en oposición, enfatizamos en que fue el TPI quién aquilató la credibilidad de lo declarado por el señor Rubero Alvarado. Es decir, tuvo la oportunidad de oírle testificar, así como observar su comportamiento mientras este deponía. No podemos obviar que el apelante en múltiples instancias expresó no recordar los asuntos medulares de lo que alegadamente se negoció entre él y Best Petroleum. No obstante, solo tenía conocimiento de aquellos elementos que le convenían para probar su reclamo. Aún más, nos parece poco creíble al manifestar que ni se acordaba cuando fue a la oficina del abogado de la parte apelada para la deposición.

Agregamos que, de la TPO surge que, durante el contrainterrogatorio, el apelante afirmó que no tenía conocimiento de que su abogada estuviera negociando una cuantía distinta de renta a los $5,000 que recibía. Lo que contradice la alegación de que dialogó con su abogada para las negociaciones. Asimismo, este reiteró que nunca solicitó una cuantía distinta a los $5,000 que le ofreció la parte apelada. No obviemos que el señor Rubero Alvarado indicó que sabe negociar y que ello implica aceptar o no aceptar la propuesta que le ofrecieron. Por ello, aceptó la oferta ya que ***Él no me iba a dar más de $5,000 pesos.***

Por tanto, reiteramos que de la TPO surge que, del testimonio del apelante, se formalizó un contrato verbal con todos los elementos constitutivos de consentimiento, objeto y causa. En este sentido, no cabe duda de que entre las partes pactaron el arrendamiento de la

gasolinera por el pago de una renta mensual de $5,000 el que aumentaría en los próximos años.

Como bien coligió el TPI "Edwin Rubero y Best Petroleum llegaron a acuerdos para el arrendamiento de la estación de gasolina. Aunque el acuerdo fue verbal, contenía los elementos fundamentales para la contratación. En otras palabras, los términos discutidos y aceptados perfeccionaron el contrato. El mero hecho de que los acuerdos se hayan discutido verbalmente y aceptado, no implica que las partes estuvieran en la fase de generar una contratación."

Por ende, los errores primero y segundo no fueron incurridos por el foro *a quo*.

Ahora bien, en los errores tercer y cuarto el apelante argumenta que el foro *a quo* falló al desestimar la demanda cuando no existe controversia de que Best Petroleum realizó varios pagos por concepto de renta de manera tardía y se probaron todos los elementos para un desahucio.

El señor Rubero Alvarado no impugnó la determinación de hechos núm. 6 de la Resolución emitida por el TPI el 12 de abril de 2024, notificada el 16 de abril, la que en unión a las demás, fueron incluidas en la *Sentencia* apelada como incontrovertidos. Recordemos que esta lee "6. Edwin Rubero ha recibido la renta mensual de $5,000."

Asimismo, de la TPO no surge que el apelante, durante su testimonio, haya probado los elementos del desahucio, en especial, que Best Petroleum, ocupa la propiedad de forma precarista, sin pagar el canon correspondiente. Por el contrario, quedó demostrado que la parte apelada está en posesión de la estación por el contrato acordado, más ha pagado los $5,000 mensuales de renta según convenido.

De igual manera, no podemos avalar el planteamiento de que por haber recibido varias mensualidades tardíamente queden evidenciados los elementos para la causa de acción del desahucio. Al respecto, resulta importante reseñar que el contrato entre las partes se originó en mayo de 2021, y conforme al testimonio del apelante, las rentas convenidas han sido satisfechas desde esa fecha. Solo algunas de las mensualidades **fueron recibidas tardíamente y sin objeción** por el apelante, pero Best Petroleum no dejó de pagarlas.

Con relación al cheque emitido el 2 de agosto de 2021 por Best Petroleum para el pago de la renta marcado como Exhibit 2, se hace importante destacar que, según el propio testimonio del señor Rubero Alvarado, este admitió que se envió a una dirección incorrecta. Sin embargo, este aclaró que tan pronto Best Petroleum se enteró de que él no había cobrado los cheques emitió el presentado en evidencia por $15,000 y fue inmediatamente a buscarlo.[37] **Por tanto, el apelante cobró los meses de renta que le debían según declaró.**

Por su parte, en este señalamiento de error se intenta utilizar el contrato verbal, **del cual se niega su perfeccionamiento**, para establecer que se estipuló, como una cláusula material y resolutoria, que Best Petroleum se obligó a pagar la renta a tiempo. Lo que nos parece una expresión acomodaticia para intentar probar la alegación. Al respecto, quedó diáfanamente evidenciado que Best Petroleum desembolsó las mensualidades a tiempo, excepto las que se pagaron con el antedicho cheque. Sobre este punto, colegimos que nunca se demostró que el pago era tardío más bien que al enterarse la parte apelada de que no se habían cobrado los cheques emitidos para el pago de la renta por los meses que cubría,

---

[37] *Íd.*, a las págs. 125-127.

inmediatamente expidió uno por $15,000 y el señor Rubero Alvarado lo cobró inmediatamente sin objeción alguna. Por tanto, no encontramos que Best Petroleum haya incumplido con la obligación contraída y, en consecuencia, se falló en probar los elementos de la causa de acción para que procediera el desahucio.

Enfatizamos que para probar un caso no bastan meras alegaciones, teoría, conjeturas ni especulaciones, pues ninguna constituye prueba. *Pressure Vessels of P.R. v. Empire Gas de P.R.,* 137 DPR 497, 526 (1994). Reiteramos, además, que el foro juzgador fue quien aquilató la credibilidad de lo que testificó el señor Rubero Alvarado al verlo declarar; así como observar su comportamiento mientras este lo hacía.

Apuntalamos, además, que los foros apelativos solo intervendrán con la apreciación de la prueba que haga el foro de instancia, cuando se demuestre que la intervención del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto.

En consecuencia, los errores no fueron cometidos.

En resumen, y a base de todo lo explicado, el TPI actuó correctamente al desestimar la demanda al palio de la Regla 39.2(c) de las de Procedimiento Civil, *supra.* Acentuamos que la más alta *Curia* dictaminó que la moción de *nonsuit* solo procederá cuando el tribunal está plenamente convencido que el demandante no tiene oportunidad de prevalecer. *Lebrón v. Díaz,* supra.

**IV.**

Por los fundamentos antes expuestos, determinamos confirmar la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

TA2025AP00173 24

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones